# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OKLAHOMA

JANICE BUSH, as Special Administrator )
for the Estate of Ronald Garland, deceased, )
                Plaintiff, )
v. ) Case No. 19-CV-00098-GKF-FHM
BRET BOWLING, in his individual )
and official capacity and individual capacity )
as Sheriff of Creek County, Oklahoma, )
*et al.,* )
                Defendants. )

## **OPINION AND ORDER**

This matter comes before the court on the Motion to Dismiss Plaintiff's Second Amended Complaint [Doc. 97] of defendant Kerri Janes. For the reasons set forth below, the motion is granted in part and denied in part.

**I.    Allegations of the Second Amended Complaint**

Plaintiff Janice Bush, as Special Administrator for the Estate of Ronald Garland, alleges the following facts relevant to defendant Kerri Janes: In June of 2017, Kerri Janes was a Nurse employed at the Creek County Detention Center ("CCDC") by defendant Turn Key Health Clinics, LLC. [Doc. 40, ¶ 6]. Creek County contracted with Turn Key to assume all aspects of the medical care delivery system at CCDC. [*Id.* ¶ 15]. Pursuant to the contract between Creek County and Turn Key, Turn Key was required to comply with Oklahoma State Department of Health jail standards, including the standard requiring that all arrestees receive a medical triage screening "immediately upon admission to the facility and before being placed in the general population or housing area." [*Id.* ¶ 19 (citing OKLA. ADMIN. CODE § 310:670-5-8(2))].

On June 10, 2017, around 4:00 a.m., the Mannford Police Department presented Ronald Garland for booking at the CCDC on charges of driving under the influence. [*Id.* ¶ 20]. No intake medical screening was performed, but Garland was placed in a housing unit. [*Id.* ¶¶ 23-24]. At 6:20 p.m. that same day, Janes created a progress note indicating that unidentified jail staff alerted her that Garland was "acting weird" in the housing unit. [*Id.* ¶ 25]. The note indicated that Janes requested jailers bring Garland to medical for an assessment. [*Id.* ¶ 26]. At 6:30 p.m., Janes entered a progress note that memorialized the following: (a) Garland would need a medical intake "ASAP"; (b) Garland appeared to be under the influence; (c) Garland was unable to provide answers to orientation questions; (d) Garland was moaning and yelling; and (e) Garland's condition was significant for possible detox. [*Id.* ¶ 27]. At 6:45 p.m., Janes entered a progress note that memorialized the following: (a) Garland was yelling and banging on the cell door; (b) Garland was unable to be still for an assessment; and (c) Garland's vitals were charted as a range. [*Id.* ¶ 28]. Janes also placed three (3) yellow Post-It notes on Garland's paperwork that stated as follows:

> "Unable to focus long enough to answer questions"
>
> "Pt would not answer health related questions clearly. Stated 'NO' to all but appears to be under the influence. Will attempt intake tomorrow AM."
>
> "Inmate denies all <u>but</u> appears to be under the influence of <u>something</u>. Came in for DUI? Alcohol? *Will ask again tomorrow."

[*Id.* ¶ 29 (emphasis in original)]. Garland was not provided a medical assessment "ASAP." [*Id.* ¶ 30]. Garland was returned to the detox cell allegedly without an adequate medical screening, and neither Janes nor the jailers took any steps to contact an appropriate level provider to discuss Garland's condition. [*Id.* ¶ 31].

Janes spoke with Garland through the door of his cell one time during the nine o'clock [p.m.] hour. A progress note memorialized the following: (a) Garland was experiencing active visual hallucinations; (b) Garland was confused; and (c) Garland was not combative. [*Id.* ¶ 37].

Plaintiff alleges that, at no point did Janes take any steps to provide Garland with any care despite the "severe risk from unscreened detoxification," and "despite actual knowledge that Garland's condition was worsening." [*Id.* ¶ 41]. Plaintiff asserts the delay or denial in taking steps to provide Garland with adequate care was the direct and proximate cause of Garland's worsening condition and caused severe and worsening pain and confusion. [*Id.* ¶ 42].

Later that night, other defendants (who were employees of the Creek County Sheriff's Office) allegedly beat Garland and then moved him to a restraint chair. One of the officer defendants shoved Garland's head downward between his knees to the point that Garland's head was nearly touching the ground, which put extreme pressure on Garland's chest and diaphragm. [*Id.* ¶¶ 48-49]. When jailers pulled Garland's head up from being compressed for an extended period of time, his body was limp. [*Id.* ¶ 51]. Garland was transported to St. John's where physicians diagnosed Garland with an anoxic brain injury from which he did not recover. Garland died on June 17, 2017. [*Id.* ¶ 52].

Based on the foregoing allegations, the Second Amended Complaint asserts claims against Janes under 42 U.S.C. § 1983, the federal civil rights statute, framed as follows: failure to adequately classify Garland "despite actual knowledge that he required medical care 'ASAP,' which caused damages and injuries" (claim 5); deliberate indifference to serious medical need by failing to take any reasonable steps to provide care for Garland (claim 7); and failure to supervise Garland (claim 8).

## II. Motion to Dismiss Standard

Federal Rule of Civil Procedure 8 requires a pleading to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The court accepts as true all factual allegations, but the tenet is inapplicable to legal conclusions. *Iqbal*, 556 U.S. at 678.

## III. Analysis

As previously stated, the Second Amended Complaint asserts three separate "claims" against Janes pursuant to § 1983. The claims are framed as failure to adequately classify, deliberate indifference to serious medical need, and failure to supervise Garland. Although set forth as separate "claims," the gravamen of plaintiff's allegations against this defendant is that Janes provided inadequate medical care to Garland, a pretrial detainee.[1] Thus, the court first considers the appropriate legal framework, and then analyzes the sufficiency of the allegations in the Second Amended Complaint.

---

[1] Further, plaintiff's response to the motion to dismiss focuses entirely on Janes's alleged failure to provide adequate medical care, and does not propose that a separate standard applies to the "failure to adequately classify" or "failure to supervise" theories.

- 4 -

1. Legal Framework

A prison official's deliberate indifference to a prisoner's "serious medical needs" constitutes cruel and unusual punishment in violation of the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). Unlike convicted prisoners, pretrial detainees are protected under the Due Process Clause rather than the Eighth Amendment. *See Lopez v. LeMaster*, 172 F.3d 756, 759 n.2 (10th Cir. 1999). Nevertheless, "a pretrial detainee enjoys *at least* the same constitutional protections as a convicted criminal." *Blackmon v. Sutton*, 734 F.3d 1237, 1240–41 (10th Cir. 2013). The Tenth Circuit has long applied the same test for deliberate indifference to serious medical needs to both Eighth Amendment claims brought by prisoners and Fourteenth Amendment claims brought by pretrial detainees. *See, e.g.*, *Clark v. Colbert*, 895 F.3d 1258, 1267 (10th Cir. 2018); *Martinez v. Beggs*, 563 F.3d 1082, 1088 (10th Cir. 2009); *Olsen v. Layton Hills Mall*, 312 F.3d 1304, 1315 (10th Cir. 2002); *Lopez*, 172 F.3d at 759 n.2.

Under the traditional standard, "[d]eliberate indifference has objective and subjective components." *Callahan v. Poppell*, 471 F.3d 1155, 1159 (10th Cir. 2006). Under the objective component, "the alleged deprivation must be 'sufficiently serious' to constitute a deprivation of constitutional dimension." *Self v. Crum*, 439 F.3d 1227, 1230 (10th Cir. 2006) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). And, under the subjective component, "the prison official must have a 'sufficiently culpable state of mind.'" *Id.* at 1230-31 (quoting *Farmer*, 511 U.S. at 834).

Plaintiff argues that, for pretrial detainees, the traditional standard has been overruled by *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2470 (2015). In *Kingsley*, the Supreme Court held that the Eighth Amendment standard for excessive force claims brought by prisoners, which requires that defendants acted with a culpable state of mind, does not apply to Fourteenth Amendment

excessive force claims brought by pretrial detainees. 135 S. Ct. at 2475. Instead, a pretrial detainee must show only that the force purposely or knowingly used against him was "objectively unreasonable" to prevail on an excessive force claim. *Id.* at 2473.

The Tenth Circuit has noted that other "[c]ircuits are split on whether *Kingsley* alters the standard for conditions of confinement and inadequate medical care claims brought by pretrial detainees." *Burke v. Regalado*, 935 F.3d 960, 991-92 n.9 (10th Cir. 2019) (quoting *Estate of Vallina v. Cty. of Teller Sheriff's Office*, No. 17-1361, 2018 WL 6331595, at *2 (10th Cir. Dec. 4, 2018)). In an unpublished decision, the Tenth Circuit observed that the claim in *Kingsley* was "an excessive-force claim where there was no question about the intentional use of force against the prisoner." *Crocker v. Glanz*, 752 F. App'x 564, 569 (10th Cir. 2018). The panel majority in *Crocker* suggested that the "analysis in *Kingsley* may not apply to a failure to provide adequate medical care or screening, where there is no such intentional action." *Id.* But the Tenth Circuit has not yet ruled directly on this issue. *See McCowan v. Morales,* — F.3d —, 2019 WL 7206045, at *11 n.12 (10th Cir. Dec. 27, 2019) (declining to address the question as the argument was not raised by the parties); *Clark*, 895 F.3d at 1269 (expressly declining to revisit the law applicable to medical care during pretrial detention in light of *Kingsley*); *Perry v. Durborow*, 892 F.3d 1116, 1122 n.1 (10th Cir. 2018) (expressly declining to address *Kingley*'s impact on a pretrial detainee's claim of supervisory liability premised on deliberate indifference).

Because *Kingsley* did not address the standard applicable to a pretrial detainee's denial of medical care claim, this court follows existing Tenth Circuit precedent as to the appropriate standard. *See Garrett v. Dupont*, No. 18-CV-284-TCK-JFJ, 2018 WL 2760028, at *3 n.2 (N.D. Okla. June 8, 2018); *Moore v. Goodman*, No. 17-CV-196-CVE-JFJ, 2017 WL 4079401, at *3 n.1 (N.D. Okla. Sept. 14, 2017); *Kerns v. Sw. Colo. Mental Health Ctr., Inc.*, No. 18-CV-2962-WJM-

SKC, 2019 WL 6893022, at **9-10 (D. Colo. Dec. 18, 2019) (applying existing precedent and distinguishing *Colbruno v. Kessler*, 928 F.3d 1155 (10th Cir. 2019)); *see also McCowan*, 2019 WL 7206045, at *11 n.12 ("We do note, however, that a claim of deliberate indifference to serious medical needs by its very terminology seems to require both a subjective and an objective test. 'Deliberate' certainly invokes a subjective analysis and 'serious medical needs' invokes an objective analysis.").

2. Analysis of the Second Amended Complaint

"A claim for inadequate medical attention will be successful if the plaintiff shows 'deliberate indifference to serious medical needs.'" *Martinez*, 563 F.3d at 1088 (quoting *Estate of Hocker v. Walsh*, 22 F.3d 995, 998 (10th Cir. 1994)). "The test for deliberate indifference is both objective and subjective." *Id.* (citing *Callahan*, 471 F.3d at 1159).

To determine the objective component, the court must determine whether the alleged harm "rises to a level 'sufficiently serious' to be cognizable under the Cruel and Unusual Punishment Clause." *Mata v. Saiz*, 427 F.3d 745, 753 (10th Cir. 2005) (quoting *Farmer*, 511 U.S. at 834). The focus of the inquiry is on the "harm claimed by the prisoner. . . not solely 'the symptoms presented at the time the prison employee has contact with the prisoner.'" *Martinez,* 563 F.3d at 1088 (quoting *Mata*, 427 F.3d at 753).

Garland's death as a result of excessive force is the ultimate harm alleged in the Second Amended Complaint. [Doc. 40, ¶¶ 48-52]. Death clearly satisfies the objective component. *See Martinez*, 563 F.3d at 1088-89. Thus, the court turns to the subjective component.

"[T]he subjective component requires the prison official to disregard the risk of harm claimed by the prisoner." *Id.* at 1089. "[A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows

SKC, 2019 WL 6893022, at **9-10 (D. Colo. Dec. 18, 2019) (applying existing precedent and distinguishing *Colbruno v. Kessler*, 928 F.3d 1155 (10th Cir. 2019)); *see also McCowan*, 2019 WL 7206045, at *11 n.12 ("We do note, however, that a claim of deliberate indifference to serious medical needs by its very terminology seems to require both a subjective and an objective test. 'Deliberate' certainly invokes a subjective analysis and 'serious medical needs' invokes an objective analysis.").

2. Analysis of the Second Amended Complaint

"A claim for inadequate medical attention will be successful if the plaintiff shows 'deliberate indifference to serious medical needs.'" *Martinez*, 563 F.3d at 1088 (quoting *Estate of Hocker v. Walsh*, 22 F.3d 995, 998 (10th Cir. 1994)). "The test for deliberate indifference is both objective and subjective." *Id.* (citing *Callahan*, 471 F.3d at 1159).

To determine the objective component, the court must determine whether the alleged harm "rises to a level 'sufficiently serious' to be cognizable under the Cruel and Unusual Punishment Clause." *Mata v. Saiz*, 427 F.3d 745, 753 (10th Cir. 2005) (quoting *Farmer*, 511 U.S. at 834). The focus of the inquiry is on the "harm claimed by the prisoner. . . not solely 'the symptoms presented at the time the prison employee has contact with the prisoner.'" *Martinez,* 563 F.3d at 1088 (quoting *Mata*, 427 F.3d at 753).

Garland's death as a result of excessive force is the ultimate harm alleged in the Second Amended Complaint. [Doc. 40, ¶¶ 48-52]. Death clearly satisfies the objective component. *See Martinez*, 563 F.3d at 1088-89. Thus, the court turns to the subjective component.

"[T]he subjective component requires the prison official to disregard the risk of harm claimed by the prisoner." *Id.* at 1089. "[A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows

SKC, 2019 WL 6893022, at **9-10 (D. Colo. Dec. 18, 2019) (applying existing precedent and distinguishing *Colbruno v. Kessler*, 928 F.3d 1155 (10th Cir. 2019)); *see also McCowan*, 2019 WL 7206045, at *11 n.12 ("We do note, however, that a claim of deliberate indifference to serious medical needs by its very terminology seems to require both a subjective and an objective test. 'Deliberate' certainly invokes a subjective analysis and 'serious medical needs' invokes an objective analysis.").

2. Analysis of the Second Amended Complaint

"A claim for inadequate medical attention will be successful if the plaintiff shows 'deliberate indifference to serious medical needs.'" *Martinez*, 563 F.3d at 1088 (quoting *Estate of Hocker v. Walsh*, 22 F.3d 995, 998 (10th Cir. 1994)). "The test for deliberate indifference is both objective and subjective." *Id.* (citing *Callahan*, 471 F.3d at 1159).

To determine the objective component, the court must determine whether the alleged harm "rises to a level 'sufficiently serious' to be cognizable under the Cruel and Unusual Punishment Clause." *Mata v. Saiz*, 427 F.3d 745, 753 (10th Cir. 2005) (quoting *Farmer*, 511 U.S. at 834). The focus of the inquiry is on the "harm claimed by the prisoner. . . not solely 'the symptoms presented at the time the prison employee has contact with the prisoner.'" *Martinez,* 563 F.3d at 1088 (quoting *Mata*, 427 F.3d at 753).

Garland's death as a result of excessive force is the ultimate harm alleged in the Second Amended Complaint. [Doc. 40, ¶¶ 48-52]. Death clearly satisfies the objective component. *See Martinez*, 563 F.3d at 1088-89. Thus, the court turns to the subjective component.

"[T]he subjective component requires the prison official to disregard the risk of harm claimed by the prisoner." *Id.* at 1089. "[A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows

of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* (quoting *Farmer*, 511 U.S. at 837).

The subjective component requires a showing that "defendants were deliberately indifferent to the specific risk" of the claimed harm, rather than more general risks. *Id.* For example, in the case of *Estate of Hocker v. Walsh*, plaintiff was placed in a detention center while intoxicated and, two days, later was discovered dead by suicide. *Estate of Hocker*, 22 F.3d at 997. The Tenth Circuit concluded that plaintiff was required to show that defendants were deliberately indifferent to "the specific risk that [the prisoner] would commit suicide," not the more general risks of intoxication. *Id.* at 1000; *see also Martinez,* 563 F.3d at 1089-90.

Pursuant to the foregoing analysis, plaintiffs must allege that Janes disregarded the risk of Garland's death due to the officer's imposition of force, including the restraint chair, rather than the more general risks associated with intoxication and/or detoxification. Plaintiff argues that the use of the restraint chair was "reasonably foreseeable" because facility policy explicitly contemplated use of the restraint chair on persons presenting a risk of harm to themselves or others. [Doc. 108, p. 14]. Setting aside whether "reasonably foreseeable" equates to Janes being "aware of facts from which the inference can be drawn that a substantial risk of serious harm exists" and Janes also drawing that inference, the Second Amended Complaint includes no allegations that Janes knew of the alleged facility policies.[2] Nor does the pleading include any allegations from

---

[2] Plaintiff cites a decision by the United States District Court for the District of Maine as supporting the proposition that "Janes cannot argue that use of the restraint chair was not reasonably foreseeable when [Garland] satisfied every criteria for use of the restraint chair when Janes sent him back to the detox cell." [Doc. 108, p. 14 (citing *Cady v. Cumberland Cty. Jail*, No. 10-CV-00512-NT, 2013 WL 3967486 (D. Me. Aug. 1, 2013)]. The *Cady* case is neither precedential nor persuasive. In that case, the defendant at issue, the director of nursing for the facility, participated

which the court may infer that Janes otherwise concluded that a risk existed that the officers may use force against Garland. Plaintiff points to Janes's knowledge that Janes was "experiencing active visual hallucinations" at the nine o'clock hour, but, in the same progress note memorializing the hallucinations, the Second Amended Complaint alleges that Janes noted Garland was "not combative." [Doc. 40, ¶ 37]. Thus, the allegations of the Second Amended Complaint expressly belie any inference that Garland posed a threat to himself or others. Based on the foregoing, the Second Amended Complaint includes no allegations from which it can be reasonably inferred that Janes knew of the risk that officers would use force on Garland, and yet chose to disregard that risk. Because plaintiff fails to sufficiently allege deliberate indifference to the risk of harm due to imposition of force, including the restraint chair, plaintiff's § 1983 claim fails to the extent premised on use of force and Garland's ultimate death.

However, the Tenth Circuit has recognized a plaintiff's right to "select[] what harm to claim." *Mata,* 427 F.3d at 753. For example, the Tenth Circuit suggested that "[t]he prisoner may be better off claiming some intermediate harm rather than the last untoward event to befall [the prisoner]," for example, "intolerable chest pain rather than the subsequent heart damage." *Id.* In her response, plaintiff points the court to the following allegations:

> At no point did Janes . . . take any steps to provide Ronald with any care despite the severe risk from unscreened detoxification, and despite actual knowledge that Ronald's condition was worsening.
>
> The delay or denial in taking steps to provide Ronald with adequate care was the direct and proximate cause of Ronald's worsening condition and caused severe and worsening pain and confusion.

---

in the decision to place the decedent in the restraint chair. *Cady*, 2013 WL 3967486, at *16. Thus, *Cady* is factually distinguishable because the Second Amended Complaint includes no allegations from which the court may infer that Janes participated in the decision to place Garland in the restraint chair.

[Doc. 108, p. 10 (citing Doc. 40, ¶¶ 41-42)].  Thus, the court considers whether the Second Amended Complaint states a § 1983 claim for inadequate medical care against Janes premised on Garland's worsening condition from detoxification.

Looking to the objective component of the "deliberate indifference" requirement, "[a] medical need is considered sufficiently serious to satisfy the objective prong if the condition 'has been diagnosed by a physician as mandating treatment or is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'"  *Al-Turki v. Robinson*, 762 F.3d 1188, 1192-93 (10th Cir. 2014) (quoting *Oxendine v. Kaplan*, 241 F.3d 1272, 1276 (10th Cir. 2001)).  "Where a prisoner claims that harm was caused by a delay in medical treatment, he must 'show that the delay resulted in substantial harm' in order to satisfy the objective prong."  *Id.* at 1193.  "[L]ifelong handicap, permanent loss, or considerable pain" satisfy the "substantial harm" requirement.  *Id*. (citing *Garrett v. Stratman*, 254 F.3d 946, 950 (10th Cir. 2001)).  "Although 'not every twinge of pain suffered as a result of delay in medical care is actionable,'" *id.* (quoting *Kikumura v. Osagie*, 461 F.3d 1269, 1292 (10th Cir. 2006)), plaintiff alleges that Garland suffered "severe and worsening pain and confusion" due to his worsening detoxification.  [Doc. 40, ¶ 42].  Taking this allegation as true and viewing it in the light most favorable to plaintiff, the Second Amended Complaint satisfies the objective component with respect to Garland's worsening condition due to detox.

As for the subjective component, the "[t]he question is: 'were the symptoms such that a prison employee knew the risk to the prisoner and chose (recklessly) to disregard it?'"  *Martinez,* 563 F.3d at 1089 (quoting *Mata,* 427 F.3d at 753).  Again, the focus is on the specific harm claimed by the pretrial detainee—at this point, "severe pain and confusion" due to worsening detoxification.  *Id.*  Even brief delays may be unconstitutional.  *Mata*, 427 F.3d at 755.

As previously stated, the Second Amended Complaint alleges that, at 6:20 p.m., Janes created a progress note indicating that unidentified jail staff alerted Jones that Garland was "acting weird" in the housing unit, and requesting that jailers bring Garland to medical for an assessment. [Doc. 40, ¶¶ 25-26]. Subsequent progress notes entered by Janes during the six o'clock hour memorialize her observations of the following symptoms: Garland appeared to be under the influence, Garland "was significant for possible detox," Garland was unable to provide answers to orientation questions or be still for an assessment, Garland answered "no" to all health-related questions but appeared to be under the influence, and that Garland was moaning, yelling, and banging on the cell door. [*Id.* ¶¶ 27-28, 29]. The Second Amended Complaint further alleges that, during the nine o'clock hour, Janes spoke with Garland and documented that Garland was experiencing active visual hallucinations and confused.

Based on these allegations, the Second Amended Complaint plausibly alleges that Janes was aware that Garland may be under the influence and/or detoxing. Janes allegedly was aware that Garland was moaning, yelling, and banging on the cell door, suggesting that he was in some discomfort. The pleading also alleges facts from which the court may infer that Janes subjectively knew that Garland's condition was deteriorating—specifically, that, at nine o'clock, Garland experienced symptoms of visual hallucinations and confusion that were not documented at the six o'clock hour. Finally, the Second Amended Complaint alleges that "[a]t no point did Janes . . . take any steps to provide [Garland] with any care despite the severe risk from unscreened detoxification, and despite actual knowledge that [Garland's] condition was worsening." [Doc. 40, ¶ 41]. Taking these allegations as true and viewing them in the light most favorable to plaintiff, the Second Amended Complaint includes plausible allegations from which the court may infer that Janes knew of the risk that Garland's condition was worsening, resulting in increasingly severe

symptoms, and chose to disregard it. Thus, the Second Amended Complaint states a plausible claim that Janes acted with deliberate indifference to Gardner's serious medical needs by recklessly failing to treat Garland properly.

**IV.     Conclusion**

WHEREFORE, the Motion to Dismiss Plaintiff's Second Amended Complaint [Doc. 97] of defendant Kerri Janes is granted in part and denied in part. The motion is granted to the extent that plaintiff asserts claims against Janes premised on the alleged use of force by defendant officers, including force resulting in decedent Ronald Garland's death. The motion is otherwise denied.

IT IS SO ORDERED this 17th day of January, 2020.

GREGORY K. FRIZZELL
UNITED STATES DISTRICT JUDGE