**SUBCHAPTER 5.   STANDARDS FOR JAIL FACILITIES/DETENTION CENTER**

Section
310:670-5-1.  Admission, release and records
310:670-5-2.  Security and control
310:670-5-3.  Supervision of prisoners
310:670-5-4.  Prisoner rules and discipline
310:670-5-5.  Classification and segregation
310:670-5-6.  Safety, sanitary and hygiene standards
310:670-5-7.  Food services and dietary requirements
310:670-5-8.  Medical care and health services
310:670-5-9.  Mail and visitation
310:670-5-10. Training and staff development
310:670-5-11. Physical plant

**310:670-5-1.  Admission, release and records**
   The following admission and release procedures shall be followed.  A facility shall have written policies and procedures for the reception, orientation and release of prisoners.
   (1) The admission process of new prisoners shall include at least the following:
      (A) Verification of arrest or commitment papers;
      (B) Complete search of the individual upon entering the facility;
      (C) Medical/mental health screening by trained facility personnel utilizing a questionnaire approved by the Department of Health, or a screening conducted by a physician or other licensed medical personnel;
      (D) Procedures to ensure orientation and understanding of facility rules;
      (E) Issue bedding, clothing, and footwear; and
      (F) Classification and assignment to a housing unit.
   (2) Positive identification shall be made of the arresting or committing officer, including verification of the officer's authority to make the commitment.
   (3) Each newly admitted prisoner shall be permitted to complete at least two (2) local or collect telephone calls during the admission process or after a reasonable length of time as determined by the administrator. These telephone calls shall be documented and a prisoner's refusal to make telephone calls shall be documented. In facilities, where prisoners have unlimited access to operational telephones, a prisoner's refusal to make telephone calls is not required to be documented.
   (4) The types of personal property prisoners may retain in their possession during confinement shall be specified in a facility's policies and procedures. Secure storage for property not authorized to be in the prisoner's possession, to include civilian street clothing shall be provided.
   (5) A written itemized inventory shall be made of all personal property of a newly admitted prisoner.
   (6) Before a prisoner is released, positive identification shall be made of the individual and authority for release shall be verified.

Exhibit 15

(7) After the individual is positively identified, the prisoner's personal property shall be returned. The items shall be compared with the inventory list and the prisoner shall sign for the returned property upon release.

(8) A logbook or computer record shall be maintained on all prisoners admitted to the facility. The logbook or computer record shall include at least the following:
  (A) Name of the prisoner;
  (B) Date and time of admission;
  (C) Date and time of release;
  (D) Offense charges;
  (E) Arrest number;
  (F) Date of birth;
  (G) Race; and
  (H) Gender;
  (I) Social security number;
  (J) Booking and intake number.

(9) An intake form shall be completed for every person admitted to a facility. The intake form shall be placed in the prisoner's file and shall contain at least the following information:
  (A) Date and time of admission;
  (B) Name and aliases of prisoner;
  (C) Address;
  (D) Name and title of arresting or delivering officer and employing agency;
  (E) Charges;
  (F) Date of birth;
  (G) Race;
  (H) Gender;
  (I) Height;
  (J) Weight (verified by scale);
  (K) Eye color;
  (L) Hair color;
  (M) Scars, tattoos and other identifying markings;
  (N) Special medical and mental health comment-data and recommendations;
  (O) Name, relationship, address and phone number of emergency contact; and
  (P) Court judgment and sentence if sentenced prisoner.

(10) Records shall be safeguarded from unauthorized disclosure. Written policies and procedures shall specify the process that prisoners and former prisoners are allowed access to their records.

(11) Individual records shall be maintained and kept current for each prisoner which shall contain at least the following information:
  (A) Intake information;
  (B) Commitment papers and court order;
  (C) Reports of disciplinary actions or unusual occurrences;
  (D) Medical, mental health and dental orders issued by the health care authority;
  (E) A medical screening shall be performed and documented on

all prisoners, and shall contain at a minimum the following information:
    (i) Communicable diseases (i.e., HIV/STD, Hepatitis, TB);
    (ii) Alcohol and drug abuse and treatment;
    (iii) Allergies;
    (iv) Injuries;
    (v) Illnesses;
    (vi) Medications;
    (vii) Suicide risk or attempts;
(F) Photographs or video imaging; and
(G) Personal property inventory.

[**Source:** Amended at 8 Ok Reg 3129, eff 7-18-91 (emergency); Amended at 9 Ok Reg 1433, eff 5-1-92; Amended at 13 Ok Reg 2139, eff 6-13-96; Amended at 20 Ok Reg 2387, eff 7-11-20031; Amended at 22 Ok Reg 2445, eff 7-11-2005]

**310:670-5-2.  Security and control**
The facility administrator shall develop and implement written policies and procedures for the safety, security and control of staff, prisoners and visitors.  Policies and procedures shall address at least the following:
  (1) A central control center shall be maintained to coordinate the facility's internal and external security network. The control center shall be staffed twenty-four (24) hours-a-day. The control center or other location may be designated by the facility administrator and shall be responsible for prisoner counts and key control.
  (2) There shall be a prisoner count at the beginning of each shift change. The prisoner count shall be documented.
  (3) There shall be at least one (1) visual sight check every hour which, shall include all areas of each cell and such sight checks shall be documented.
  (4) All security perimeter entrances, control center doors, cell block doors and doors opening into a corridor shall be locked except when used for authorized entry and exit. Staff members shall know which doors should be locked and under what circumstances they should be opened.
  (5) No one person shall be permitted to enter a prisoner's cell or other area in which a prisoner is confined, past the last locked door, without backup assistance.  Prior to breaching the last locked/secure door, central control or another staff member who can provide assistance will be notified. Documentation shall reflect the reason for the decision to enter a cell without backup assistance and a permanent record of the event shall be maintained.
  (6) A weekly security device inspection shall be performed and priority corrective action taken on any discrepancy. A weekly inspection report shall be submitted to the facility administrator.
  (7) Searches of facilities and prisoners to control contraband shall be unannounced and at irregular intervals. These searches shall be documented.

(8) The availability, control and use of firearms, ammunition, chemical agents and related security equipment shall be sufficient to meet needs. The level of authority required for access to, and use of, security equipment shall be specified in policy and procedure. Chemical agents shall be used only with the authorization of the facility administrator or designee. Jailers shall be trained in the use of chemical agents as prescribed by the manufacturer's specification.

(9) Firearms, ammunition, chemical agents and related security equipment shall be stored in a secure but readily accessible depository located outside the prisoner living area. The facility may adopt policy and procedures that authorize trained and certified jailers to be equipped with chemical agent and non-lethal weapons while on duty.

(10) Firearms, chemical agents and related security equipment shall be inventoried at least one (1) time each month to determine their condition and expiration dates. Firearms shall be cleaned and fired annually and repairs shall be made as needed.

(11) In an emergency situation, supervision of armed personnel is essential and only weapons/firearms authorized by the administrator shall be used.

(12) Personnel discharging firearms or using chemical agents shall submit a written report to the facility administrator documenting the nature of the incident and the identity of the personnel and prisoners involved. All persons, employees and prisoners involved in an incident where a weapon or chemical agent or force was used shall receive an immediate medical examination and/or treatment.

(13) Except in emergency situations, a weapon shall not be permitted in the secure area. There shall be a system of checking firearms and ammunition for temporary secure storage outside the secure perimeter.

(14) All keys shall be issued from a secure location designated by the jail administrator, and a log shall be used to record the number of each key, location of the lock and the number of keys to each lock. The key control system shall include a current accounting of the location and authorized person to have each key. Keys shall be returned to the control center or a secure issue location at each shift change. There shall be at least one (1) duplicate key to each lock that is maintained in a secure location inaccessible to prisoners.

(15) Tools and utensils such as hacksaw blades, welding equipment, culinary, barber shears and all sharps of similar-type equipment shall be secured, issued and used in accordance with prescribed policy and procedure. The control system shall also provide for this type of tool and equipment brought into the facility by outside authorized persons.

(16) Prisoners shall not possess flammable, toxic or caustic materials unless they are under supervision of qualified personnel. Such materials shall be stored in secure areas that are inaccessible to prisoners.

(17) A post order shall be prepared for each post or duty

assignment to be performed, and it shall specify the procedure to be followed for completing the assignment.

(18) There shall be written procedures for dealing with an escape. These procedures shall be available to all personnel and shall provide for sounding an alarm, alerting officials, mobilizing resources and ending the alert. Following an escape, the staff shall prepare an analysis of the escape and defects in the security system shall be corrected immediately.

(19) There shall be written procedures that specify what actions to take in emergency situations, i.e., fire, disturbances, and taking hostages. The procedures shall specify areas of responsibility, the staff to be involved, when and what authorities shall be notified, how the problem may be contained and what shall be done after the incident ends. Emergency housing and supervision of prisoners shall be provided.

(20) Staff shall be knowledgeable of and trained in the implementation of the emergency plans.

(21) An emergency auxiliary power generator or battery-operated system that meets fire and life safety codes shall be provided to maintain lighting and essential equipment in an emergency.

(22) All emergency equipment shall be inspected at least one (1) time each month and corrective action taken as needed. These inspections shall be documented.

(23) The use of physical force by staff shall be restricted to instances of justifiable self-protection, protection of others, protection of property and prevention of an escape, and shall be only to the degree necessary. A written report shall be prepared and submitted to the administrator following the use of physical force. All persons, employees, and prisoners involved in an incident where a weapon, chemical agent, or physical force was used shall receive an immediate physical inspection, and if affected by the action, shall receive a medical examination and treatment.

(24) Instruments of restraint such as handcuffs, leg irons, restraint chairs, restraint beds and straitjackets, shall not be applied longer than authorized by policy and procedure and equipment manufacturers specifications. Prisoners placed in restraints shall not be left without required supervision. Instruments of restraint shall be used only as follows:
   (A) As a precaution against escape during transfer;
   (B) For medical/mental health reasons, by direction of the designated medical authority and jail facility administrator or designee; and
   (C) To prevent prisoner self-injury, injury to others or property damage, and then only with the approval of the jail administrator or designee.

(25) Guidelines for transporting prisoners shall emphasize safety and security and shall be available to all staff involved in transporting prisoners.

(26) All entrances and exits to the facility shall be secure.

(27) In case of a death or an escape with injury, the Department shall be notified immediately.

(28) The Department shall be notified no later than the next

  working day if any of the following incidents occur:
   (A) Extensive damage to jail property;
   (B) Serious injury to staff or prisoner defined as life threatening or requiring transfer to outside medical facility;
   (C) Escape;
   (D) Serious suicide attempt, defined as life threatening or requiring transfer to outside medical facility.
  (29) Trusties shall be either locked down or confined to the facility when not engaged in a job assignment. Trusties permitted outside the facility shall be supervised according to the written policy of the sheriff, chief of police, jail administrator and/or as required by state statute.

[**Source:** Amended at 8 Ok Reg 3129, eff 7-18-91 (emergency); Amended at 9 Ok Reg 1433, eff 5-1-92; Amended at 13 Ok Reg 2139, eff 6-13-96; Amended at 20 Ok Reg 2387, eff 7-11-20031; Amended at 22 Ok Reg 2445, eff 7-11-2005]

**310:670-5-3. Supervision of prisoners** [1], [2]
(a) The movement of prisoners from one location to another shall be controlled and supervised by staff.
(b) Staff shall provide twenty-four (24) hour supervision of prisoners.

---

[1] Effective July 1, 2005, Title O.S. 74 Section 192 was amended by Section 1 of Enrolled Senate Bill No 725 to include this new subsection:
 *D. Any county or municipality that operates a jail facility which houses more than twenty and less than seventy-five prisoners at all times which:*
  *1. Provides twenty-four-hour supervision of prisoner activity that is conducted either by direct observation or electronically by closed circuit television; and*
  *2. Provides an intercommunication system that terminates in a location that is staffed twenty-four (24) hours a day and is capable of providing an emergency response,*
*shall be required to have more than one jailer or one jailer and at least one other basic CLEET-certified person on the same premises as the jail facility to provide for the security, custody, and supervision of prisoners.* [74:192]

[2] Effective July 1, 2005, a new section of law was established at Title O.S. 19 Section 513.1, by Section 2 of Enrolled Senate Bill No 725. The new section is as follows:
 *Every sheriff shall require appropriate training for deputies and jailers in accordance with the jail standards promulgated by the State Department of Health. The sheriff shall not permit supervision of any prisoner in the custody of the jail by any person that does not meet the jail standards for training and supervision of inmates. The sheriff or contractor having charge and custody of the jail shall comply with all minimal supervision standards pursuant to the jail standards promulgated by the State Department of Health, except when otherwise provided by law. Nothing in this section shall be construed to prohibit or restrict the sheriff or contractor having charge and custody of the jail from training or cross-training a person as a backup jailer, if otherwise qualified for such position.* [19:513.1]

(c) Jailer posts shall be located and staffed to monitor all prisoner activity either physically or electronically and close enough to the living areas to respond immediately to calls for assistance, and respond to emergency situations. A jailer shall be on duty at all times at each location where prisoners are confined or the observation shall be conducted by closed circuit TV. The location shall be equipped with an intercommunication system that terminates in a location that is staffed twenty-four (24) hours-a-day and is capable of providing an emergency response.

(d) There shall be sufficient staff to perform all assigned functions relating to security, custody and supervision of prisoners. Staff assignments shall provide for backup assistance for all employees entering locations where prisoners are confined.

  (1) Any city jail or county jail which houses twenty (20) prisoners or less *shall not be required to have more than one jailer or dispatcher on-site to provide for the security, custody and supervision of prisoners* [74:192(C)] provided the following requirements are met:

    (A) The facility *provides twenty-four-hour supervision that is conducted either by direct observation or electronically by closed circuit television* [74:192(C)(1)];

    (B) The facility *provides an intercommunication system that terminates in a location that is staffed twenty-four (24) hours a day and is capable of providing an emergency response* [74:192(C)(2)]; and

    (C) The on-site jailer or dispatcher providing security, custody and supervision, shall have completed the training required in OAC 310:670-5-10.

  (2) Facilities which house more than twenty (20) prisoners shall have on site one (1) dispatcher or control center operator and a minimum of two (2) jailers on the premises.

(e) All prisoners shall be searched thoroughly when entering or leaving the security area.

(f) Policies and procedures shall specify a system for the supervision of female prisoners by male staff and supervision of male prisoners by female staff.

(g) When both male and female prisoners are housed in a facility, at least one male and one female trained jailer shall be available to perform sensitive functions and procedures as necessary to accommodate prisoner gender.

(h) A prisoner shall be prohibited from supervising, controlling, exerting or assuming any authority over another prisoner.

(i) The name and telephone number of the practicing attorneys and bonds persons in the area shall be posted conspicuously near the telephone used by prisoners. This can be a telephone book.

(j) Direct supervision of prisoners shall be permitted if the facility has policies and procedures in place to ensure the safety of employees, prisoners and visitors and if the physical plant design lends itself to direct supervision operation.

[**Source:** Amended at 8 Ok Reg 3129, eff 7-18-91 (emergency); Amended at 9 Ok Reg 1433, eff 5-1-92; Amended at 13 Ok Reg 2139, eff 6-13-96; Amended at 20 Ok Reg 2387, eff 7-11-20031; Amended at 22 Ok Reg 2445, eff 7-11-2005]

**310:670-5-4. Prisoner rules and discipline**
(a) Written facility rules shall list all chargeable offenses, and the range of sanctions and disciplinary procedures to be followed and shall be made available to prisoners. A rule book that contains all chargeable offenses, range of sanctions, and disciplinary procedures is provided to each prisoner upon booking and is translated into those languages spoken by the significant number of prisoners. When a literacy or language problem prevents a prisoner from understanding the rule book, a staff member shall assist the prisoner.
(b) All persons who deal with prisoners shall be familiar with the rules of prisoner conduct, and the approved sanctions. To prevent discrepancies among staff in interpretations, in-service training shall be conducted as often as necessary by direction of the administrator.
(c) Employees shall prepare a disciplinary report when they have reason to believe that a prisoner has committed a violation of rules.
(d) Disciplinary reports prepared by staff shall include at least the following:
　(1) Specific rules violated;
　(2) A formal statement of the charge;
　(3) Any unusual prisoner behavior;
　(4) Any staff or prisoner witness;
　(5) Disposition of any physical evidence;
　(6) Any immediate action taken, including the use of force; and
　(7) Date and time of the report.
(e) Administrative due process procedures shall be followed for all rule violations. A chairperson or a committee may be appointed by the administrator to hear the charges and make a decision on appropriate action to be taken. Due process procedures shall include at least the following elements:
　(1) Written rules that specify offenses and sanctions;
　(2) Prisoner has been made aware of the rules and sanctions;
　(3) Prisoner receives written notice of the charges and time of hearing prior to the hearing;
　(4) Prisoner is present at the hearing and hears evidence, except for confidential information or presents unruly behavior or waives that right in writing;
　(5) Prisoner has the right to make his own statement;
　(6) Prisoner has the right to call relevant witnesses;
　(7) Prisoner may be assisted by a willing prisoner or staff member of his choosing;
　(8) The decision shall be based solely on the evidence and shall be rendered in writing;
　(9) Record shall be made of the hearing;
　(10) Decision shall be reviewed by the facility administrator or designee;
　(11) A prisoner shall have the right to appeal the decision of the facility administrator or designee to the next level of authority;

(12)  If a prisoner is found not guilty, the disciplinary report and all associated documents shall be removed from the prisoner's file;
(13)  If a prisoner is found guilty, the findings shall be maintained in the prisoner's file.
(f) If a prisoner allegedly commits an act covered by statutory law, the case may be referred to the appropriate court or law enforcement officials for prosecution.
(g) There shall be a written policy and procedure to respond to prisoner requests to staff and grievances.
[**Source:**  Amended at 8 Ok Reg 3129, eff 7-18-91 (emergency); Amended at 9 Ok Reg 1433, eff 5-1-92; Amended at 13 Ok Reg 2139, eff 6-13-96; Amended at 20 Ok Reg 2387, eff 7-11-2003]

**310:670-5-5.  Classification and segregation**
The facility administrator shall develop and implement written policies and procedures for the classification and segregation of prisoners. The classification plan shall ensure the safety of prisoners and staff. The following criteria shall ensure an adequate classification and reclassification system.
  (1) Prisoners of opposite sex shall be housed separately. Separation shall be by substantial architectural arrangements which permit no sustained visual contact.
  (2) If detention of a juvenile is authorized, such juveniles shall be housed completely separate from adults. Separation shall be by substantial architectural arrangements which permit no visual contact with adult prisoners.
  (3) Prisoners considered to be a threat to other prisoners or staff shall be housed separately from other prisoners for the following reasons:
      (i)   Prisoner's past criminal history;
      (ii)  The nature and severity of the charges pending against the prisoner;
      (iii) Prisoner's behavior while in the facility; and
      (iv)  Other relevant reasons as directed by the administrator.
  (4) Prisoners may be double-celled or confined to dormitory-style housing if the floor space meets the square footage requirements. These prisoners shall be afforded the same living conditions and privileges as those occupying the general population. Any exception regarding conditions and privileges shall be defined by the administrator.
  (5) Prisoners who are intoxicated or under the influence of a controlled substance shall be housed separately from other prisoners until such time as the medical authority or the jail administrator determines their suitability for placement into general population or other appropriate housing.
  (6) Prisoners who are mentally ill shall be separated from other prisoners. Every effort shall be made to contact a local hospital, clinic or mental health facility for the detention of the mentally ill.
  (7) Unsentenced prisoners shall be separated from sentenced prisoners, to the extent possible, and shall be permitted

whatever confinement is least restrictive unless prisoner behavior or other security considerations dictate otherwise.
(8) Classification and segregation shall not be done solely on the basis of race, color, creed or national origin.

[**Source:** Amended at 8 Ok Reg 3129, eff 7-18-91 (emergency); Amended at 9 Ok Reg 1433, eff 5-1-92; Amended at 13 Ok Reg 2139, eff 6-13-96; Amended at 20 Ok Reg 2387, eff 7-11-2003]

**310:670-5-6. Safety, sanitary and hygiene standards**
The administrator shall develop and implement policies and procedures for the safety and maintenance of sanitation throughout the facility. These shall include at least the following:
(1) The facility shall comply with state and local sanitation and health codes, as well as the Life Safety code.
(2) There shall be a housekeeping plan for the facility that includes a cleaning schedule with specific duties. Cleaning activities performed by prisoners shall be supervised at all times.
(3) Floors shall be kept clean, dry and free of hazardous substances.
(4) Prisoners shall be provided with cleaning materials daily to clean showers, washbasins and toilets.
(5) Smoking in a county jail facility shall not be permitted in accordance with 21 O.S. Section 1247.
(6) Upon admission or after commitment by the court, each prisoner shall be issued personal hygiene items to include—soap, towel, toilet paper, toothbrush and toothpaste. Feminine hygiene articles shall be provided upon request. Razors are issued to each prisoner upon request, and collected immediately after use and disposed of or stored as specified by facility policy and procedures. Prisoners shall not share razors. With the exception of toilet paper and feminine hygiene items, prisoners who are not indigent and have funds in their prisoner account may be required to purchase hygiene items from the jail facility.
(7) Clean bedding shall be issued to each prisoner who is confined overnight in the facility. A standard issue of bedding shall include:
  (A) An approved mattress with a cleanable surface; and
  (B) Enough clean blankets to provide comfort under the existing weather conditions.
(8) Prisoners held over twenty-four (24) hours shall be issued a clean set of appropriately sized jail clothing to include, at least, shirts and trousers, coveralls and footwear.
(9) A prisoner shall be given an opportunity to receive a complete change of clothing at least one (1) time each week.
(10) Clean bedding and towels shall be offered at least one (1) time each week.
(11) Laundry services shall be sufficient to permit regular exchange of all prisoner clothing, bedding and towels.
(12) Blankets and mattresses shall be cleaned or sanitized before reissue.
(13) Issuance of all clothing and bedding shall be documented

and prisoners shall be held accountable for these items.

(14) The supply of bedding, linens and clothing shall exceed that required for the facility's maximum prisoner rated population capacity.

(15) Under extreme circumstances it may be necessary for the administrator to authorize the removal of linens, clothing and bedding from a prisoner. Such action may be taken only as a measure to protect the prisoner from self-injury, to protect others or to prevent facility damages. Such actions shall be documented and reviewed at least daily by jail administration. A paper gown or another appropriate garment may be provided as appropriate.

(16) Sufficient showers shall be provided in housing units to provide prisoners the opportunity to bathe at least three (3) times each week. Prisoners working in food service shall be required to bathe daily.

(17) Haircuts shall be available to prisoners based on arrangements specified in facility policy and procedures.

(18) The potable water supply shall meet all state and local water quality standards. Hot and cold water shall be provided in showers and washbasins.

(19) Any condition conducive to harboring or breeding insects, rodents or other vermin shall be eliminated immediately. Licensed pest control professionals shall be contracted to perform pest control on a scheduled basis specified in the facility policy and procedure.

(20) Liquid and solid wastes shall be collected, stored and disposed of in a manner that avoids nuisance and hazards and protects the health and safety of prisoners and staff. Garbage shall be stored in rust resistant, water-tight, rodent-proof and easily cleanable containers with tight fitting lids. Biomedical waste shall be stored and destroyed in compliance with state and federal requirements.

(21) The facility's fire prevention policies and procedures shall ensure the safety of staff, prisoners and visitors. These shall include, but not be limited to an adequate fire protection service; a system of fire inspection and testing of equipment and documentation on a weekly basis; and the availability of fire hoses or extinguishers at appropriate locations throughout the facility. The facility shall have an automatic fire alarm and heat and smoke detection system approved by the Oklahoma State Fire Marshal.

(22) There shall be containers for refuse in prisoner living quarters and in other locations throughout the facility. Containers shall be fire retardant and approved for use in a jail facility.

(23) The facility shall have a written evacuation plan in the event of fire or major emergency. Prisoners shall be instructed on emergency procedures.

(24) There shall be a reliable means to permit prompt release of prisoners from locked areas in case of emergency. The route of evacuation shall be posted in conspicuous locations throughout the facility.

(25) Facility furnishings, walls, ceilings and floors shall be constructed of material that meets the Oklahoma Fire Safety Code.
(26) Heating systems shall be capable of maintaining a temperature of at least sixty-five (65) degrees Fahrenheit. Open-faced or un-vented heaters are not permitted.
(27) Air circulation and ventilation shall be capable of maintaining a temperature of at least eighty-five (85) degrees Fahrenheit or lower. If temperature exceeds eighty-five (85) degrees Fahrenheit, positive air movement shall be provided by use of fans, coolers, or air conditioning units. New facilities or substantially remodeled facilities shall be equipped with central air conditioning or individual air conditioning units which are capable of maintaining a temperature of eighty-five (85) degrees Fahrenheit.

[**Source:**   Amended at 8 Ok Reg 3129, eff 7-18-91 (emergency); Amended at 9 Ok Reg 1433, eff 5-1-92; Amended at 13 Ok Reg 2139, eff 6-13-96; Amended at 20 Ok Reg 2387, eff 7-11-20031; Amended at 22 Ok Reg 2445, eff 7-11-2005]

**310:670-5-7.  Food services and dietary requirements**
The jail administrator shall comply with OAC 310:256.
(1)  Each prisoner shall be provided at least three (3) meals each twenty-four (24) hours that meet the national recommended allowance for basic nutrition. At least two (2) hot meals shall be provided daily. There shall not be more than fourteen (14) hours between the breakfast and evening meals.
(2)  Special diets shall be available for prisoners upon a physician's or dentist's authorization. Special diets shall be planned and prepared by one who is skilled in preparing special diets according to a physician's or dentist's authorization. Special diets shall conform as closely as possible to the food served other prisoners.
(3)  If it is a requirement of a prisoner's religious beliefs that the prisoner adhere to dietary practices, reasonable provision shall be made for such diets from meals that are currently being served.
(4)  A uniform record keeping system shall be developed to record the items served for each meal.
(5)  Food shall not be used as a reward or disciplinary action, nor shall the menu be varied for the same reason.
(6)  All meals shall be served under the direct supervision of staff. A prisoner's refusal to eat shall be documented at each meal and reported to jail administration.
(7)  Any prisoner assigned to food service shall be closely supervised and shall maintain a high degree of personal hygiene. Each prisoner, providing food service or acting as a food employee, shall be screened for communicable diseases. Each prisoner, providing food service or acting as a food employee, shall wear a hairnet or hat, beard guard, and gloves while preparing and serving food.
(8)  Ice machines that are available to the prisoners shall be dispenser-type.

   (9) Menus shall be reviewed and approved in advance by a registered dietician or a request may be made to the Department of Health for a standardized menu.

[**Source:** Amended at 8 Ok Reg 3129, eff 7-18-91 (emergency); Amended at 9 Ok Reg 1433, eff 5-1-92; Amended at 13 Ok Reg 2139, eff 6-13-96; Amended at 20 Ok Reg 2387, eff 7-11-20031; Amended at 22 Ok Reg 2445, eff 7-11-2005]

**310:670-5-8. Medical care and health services**

   Adequate medical care shall be provided in a facility. The administrator shall develop and implement written policies and procedures for complete emergency medical and health care services. Policies and procedures shall include at least the following:

   (1) The administrator shall be responsible for the facility's medical services and shall develop, with the assistance of a designated medical authority, the facility's health care plan. Security restrictions shall be considered in the development of the plan, and any medical personnel included in the plan shall have their responsibilities regulated by written job descriptions. The health care plan shall cover at least the standards outlined in this section.

   (2) Medical triage screening shall be performed on all prisoners immediately upon admission to the facility and before being placed in the general population or housing area. Those individuals who appear to have a significant medical or psychiatric problem, or who may be a suicide risk, shall be transported to the supporting medical facility as soon as possible. They shall be housed separately in a location where they can be observed frequently by the staff at least until the appropriate medical evaluation has been completed. If after stringent evaluation by the highest-ranking mental health professional, in conjunction with a senior detention supervisor, these prisoners may be authorized to share the same cell.

     (A) Medications in the possession of the prisoner at the time of the booking, whether prescription or over-the-counter shall be logged, counted and secured. Prescription medications shall be provided to the prisoner as directed by a physician or designated medical authority. The prisoner shall be observed to ensure the prisoner takes the medication. Neither prescription or over-the-counter medications shall be kept by a prisoner in a cell with the exception of prescribed nitroglycerin tablets and prescription inhalers. Over-the-counter medications shall not be administered without a physician's approval unless using prepackaged medications.

     (B) Medical reception information shall be recorded on a printed screening form approved by the designated medical authority which shall include inquiry into:

        (i) Current illnesses and health problems including medications taken and any special health requirements;

        (ii) Behavioral observation, including state of consciousness and mental status;

    (iii) Notation of body deformities, trauma markings, i.e., bruises, lesions, ease of movement, and jaundice;
    (iv) Condition of skin and visible body orifices, including infestations; and
    (v) Disposition/referral of prisoners to qualified medical personnel on an emergency basis.
 (3) Delousing procedures shall be developed in coordination with the designated medical authority and used whenever vermin are detected.
 (4) Prisoners are informed upon admission to the facility about the procedures for gaining access to medical and health care services. These procedures shall be posted in a conspicuous place.
 (5) Each facility shall have a plan and provide twenty-four (24) hour emergency medical and dental care. Emergency plans shall at least include arrangements for:
  (A) The use of one (1) or more hospital emergency rooms or other appropriate health care facility;
  (B) The use of an emergency medical vehicle; and
  (C) An emergency on-call physician and dentist when the emergency health care facility is not located in a nearby community.
 (6) If the need is indicated by the medical screening at booking, prisoners held for forty-eight (48) hours or more, shall undergo a medical examination which shall be conducted by licensed medical personnel.
 (7) An appointment shall be made with a physician or other licensed medical personnel within forty-eight (48) hours of a valid written request unless more immediate action is dictated by the severity of the current situation.
 (8) If medical services are delivered in the facility, adequate space, equipment, supplies and materials as determined by the designated medical authority, shall be provided for primary health care delivery.
 (9) First aid kits approved by the designated medical authority, shall be available in each facility. They shall be located in an area(s) also approved by the designated medical authority.
 (10) Referral sources shall be identified in advance by the designated medical authority or administrator.
 (11) The administration of medications, and the date, time and place of medical encounters shall be documented.
 (12) Copies of the medical record, or a discharge summary if any, shall accompany a prisoner upon transfer to another facility.
 (13) Any remaining medications shall accompany the prisoner upon transfer to another facility or upon release. The amount of medications provided shall be documented. The count at that time shall be logged.
 (14) Staff shall wear disposable gloves when dealing with possible exposure to a prisoner's body fluids.
 (15) Biomedical waste shall be stored and destroyed in compliance with state and federal requirements.

(16) Sharps, i.e., needles, lancets and scalpels shall be disposed of in a puncture-proof container.

(17) Staff shall receive a TB skin test as a part of the pre-employment evaluation and each twelve (12) months as long as the test is negative. Individuals with positive skin tests shall be referred to the local health department or personal physician for evaluation. Employees will also be offered hepatitis B vaccination within one month of employment, at no cost to the employee.

(18) Universal precautions shall be used at all times by all employees.

[**Source:**   Amended at 8 Ok Reg 3129, eff 7-18-91 (emergency); Amended at 9 Ok Reg 1433, eff 5-1-92; Amended at 13 Ok Reg 2139, eff 6-13-96; Amended at 20 Ok Reg 2387, eff 7-11-20031; Amended at 22 Ok Reg 2445, eff 7-11-2005]

**310:670-5-9. Mail and visitation**

Written policies and procedures shall govern prisoner correspondence. Policies and procedures shall include at least the following:

(1) There shall be no limitations on the volume of mail a prisoner may send or receive as long as the prisoner provides postage. The facility shall provide postage, one (1) time per week, for prisoners who do not have funds for correspondence with their attorney, court officials, elected officials, and next of kin.

(2) The number of approved correspondents for a prisoner shall be unlimited. A facility shall allow prisoners access to publications to the extent that such access is consistent with security.

(3) Incoming and outgoing prisoner mail shall not be read except when such correspondence, in the opinion of the administrator, poses a threat to safety and security.

(4) Incoming prisoner mail from court officials, the prisoner's attorney and elected public officials shall be opened and inspected for contraband only in the presence of the prisoner.

(5) Outgoing prisoner mail to court officials, the prisoner's attorney and elected public officials shall not be opened.

(6) Cash, checks or money orders received from incoming mail shall be removed and credited to the prisoner's account. Contraband shall be removed if it is discovered in either incoming or outgoing mail. Contraband shall be considered anything not authorized to be in a prisoner's possession.

(7) Outgoing mail shall be collected and sent daily except Sundays and holidays and incoming mail shall be delivered to prisoners within twenty-four (24) hours of its arrival at the facility.

(8) The number of visitors a prisoner may receive and the length of visits shall be limited only by facility security, visitation, space and schedules.

(9) Licensed attorneys and ministers shall be allowed additional visitation privileges and accommodations, which

ensure privacy and are consistent with security.
(10) Policies and procedures shall allow special visits for persons who have come long distances.
(11) Visitors shall register upon entry to the facility and may be searched.
(12) Visitation by a person under age 18 may be permitted if the visitor is a member of the prisoner's immediate family and if a parent or legal guardian accompanies the visitor.

[**Source:** Amended at 8 Ok Reg 3129, eff 7-18-91 (emergency); Amended at 9 Ok Reg 1433, eff 5-1-92; Amended at 13 Ok Reg 2139, eff 6-13-96; Amended at 20 Ok Reg 2387, eff 7-11-2003]

**310:670-5-10.  Training and staff development**
The administrator shall develop policies and procedures for staff orientation and training. The training program shall be supervised by a designated employee. A facility with more than one-hundred (100) employees shall employ a full-time person for staff orientation and training.  Policies and procedures shall include at least the following:
(1) A new employee shall receive orientation and training prior to job assignment by the employing agency.
(2) All employees, including the jail administrator and all supervisors, who work in direct contact with prisoners during the first year of their employment shall receive at least twenty-four (24) hours of training that covers at least the following:
   (A) Security procedures;
   (B) Supervision of prisoners;
   (C) Report writing and documentation;
   (D) Prisoner rules and regulations;
   (E) Grievance and disciplinary procedures;
   (F) Rights and responsibilities of prisoners;
   (G) Emergency procedures;
   (H) First aid and cardiopulmonary resuscitation; and
   (I) Requirements of this Chapter.
(3) After the first year of employment, an employee who works in direct contact with prisoners shall receive at least the following training. This training shall be in addition to any requirements for completion of first aid and cardiopulmonary resuscitation. Before training begins a training schedule shall be provided to the Department for approval, listing subjects, number of hours, date, time, location and instructor.
   (A) Four (4) hours review of the required training items.
   (B) Eight (8) hours training provided by the administrator; content and instructors shall be selected by the administrator.
   (C) A test shall be given by the Department that covers this Chapter.
(4) A documentation log shall be sent to the Department for each person who completes the required training.
(5) Training may be given through other programs that have first been reviewed and approved by the Department.
(6) A passing score on the test given by the Department shall

be seventy (70) percent or higher. Any person scoring less than seventy (70) percent shall not be considered to have satisfactorily completed training and may retest as necessary for a period of up to one year.

[**Source:**   Amended at 8 Ok Reg 3129, eff 7-18-91 (emergency); Amended at 9 Ok Reg 1433, eff 5-1-92; Amended at 13 Ok Reg 2139, eff 6-13-96; Amended at 20 Ok Reg 2387, eff 7-11-20031; Amended at 22 Ok Reg 2445, eff 7-11-2005]

**310:670-5-11.  Physical plant**
(a)  **Existing facilities.**
   (1)  The reception and release area shall be located inside the security perimeter, but outside the prisoner living quarters. There shall be a secure weapons storage area outside of the custody perimeter.
   (2)   All cells and living areas shall have at least forty (40) square feet of floor space for the initial prisoner and at least twenty (20) square feet of floor space for each additional prisoner occupying the same cell.  Double-celling of prisoners is permitted if there is at least sixty (60) square feet of floor space for two (2) persons.
   (3)   The facility shall have at least one (1) special purpose cell to provide for the temporary detention of prisoners under the influence of alcohol or dangerous substances or for persons who are uncontrollably violent or self-destructive.  These cells shall be designed to prevent injury.
   (4)  The housing and activity areas shall provide, at least the following:
      (A) Lighting of at least twenty (20) foot candles;
      (B) One (1) toilet and one (1) washbasin, with hot and cold running water, in every cell or dormitory at a ratio of at least one (1) toilet and one (1) washbasin to twenty (20) prisoners; and
      (C) A shower with non-skid floors and with hot and cold running water, at a ratio of at least one (1) shower to twenty (20) prisoners in the housing areas.
   (5)  There shall be sufficient floor drains to ensure a sanitary facility.
   (6)  There shall be designated and marked emergency evacuation exits that comply with the Fire Safety Code which permits prompt evacuation of prisoners and staff in an emergency.
   (7)  A county may provide a dormitory-style jail to accommodate up to medium-security prisoners.  It shall be equipped with washbasins, toilets and showers with hot and cold running water at a ratio of at least one (1) washbasin, one (1) toilet and one (1) shower to twenty (20) prisoners.  A dormitory-style jail shall meet all requirements for a jail facility.
(b) **New facilities and substantial remodeling of facilities (after January 1, 1992).**  Plans for the construction of a new facility or the substantial remodeling of an existing facility shall be submitted to the Department for approval.
   (1)  A new jail facility shall be geographically accessible to criminal justice and community agencies.

(2)  The reception and release area shall be located inside the security perimeter but outside prisoner living quarters.  The reception and release area shall have the following components:
  (A)  Sally port;
  (B)  Secure weapons storage, outside the jail custody perimeter;
  (C)  Temporary holding rooms with adequate seating for its rated capacity, toilets and washbasins;
  (D)  Booking area;
  (E)  Medical examination room;
  (F)  Shower facilities;
  (G)  Secure area for prisoner personal property storage;
  (H)  Telephone access;
  (I)  Interview room; and
  (J)  General administration space.
(3)  Cells shall be constructed and arranged to allow direct natural light into each area.
(4)  Windows shall conform to ACA standards.
(5)  All areas shall provide for at least twenty (20) foot candles of light.
(6)  Each cell and detention room shall have at least forty (40) square feet of floor space for the initial prisoner, and at least twenty (20) square feet of floor space for each additional prisoner occupying the same cell.  Double-celling is permitted if there is at least sixty (60) square feet of floor space for two (2) persons.  Each room or cell shall have:
  (A)  One (1) toilet and one (1) washbasin with hot and cold running water, for every single or double occupancy cell or dormitory at a ratio of at least one (1) toilet and one (1) washbasin to twenty (20) prisoners.
  (B)  Bunks and storage as indicated by square feet.
(7)  A county may provide a dormitory-style jail to accommodate minimum security prisoners. A dormitory-style jail shall be equipped with washbasins, toilets and showers with hot and cold running water at a ratio of at least one (1) washbasin, one (1) toilet and one (1) shower to twenty (20) prisoners. A dormitory-style jail shall meet all requirements for jail facilities.
(8)  There shall be a dayroom area for each living unit containing at least thirty-five (35) square feet of floor space per prisoner for the maximum number of prisoners who use the dayroom at one time.  It shall be separate and distinct from the sleeping area but immediately adjacent and accessible.
(9)  Living areas shall be planned and organized to permit segregation of prisoners according to existing laws, and the facility's classification plan.
(10) Each facility shall have at least one (1) special purpose cell or room to provide for the temporary detention of persons under the influence of alcohol or dangerous substances, or for persons who are uncontrollably violent or self-destructive. Such cells shall be designed and located to prevent injury to confined persons.
(11) There shall be showers with hot and cold running water at a ratio of at least one (1) shower to twenty (20) prisoners in

    the housing areas.
    (12) There shall be sufficient floor drains to ensure a sanitary facility.
    (13) If the facility maintains an arsenal it shall be located outside the prisoner area accessible only to authorized persons for secure storage, care and issuance of weapons, firearms, ammunition, chemical agents and other related security equipment.
    (14) Space shall be provided for the secure storage of items a prisoner has in his possession at the time of booking.
    (15) Space shall be provided for administrative, professional and clerical staff, including conference rooms, storage room for records, public lobby and toilet facilities.
    (16) There shall be designated and marked emergency exits that comply with the Fire Safety Code which permits prompt evacuation.
    (17) In areas not specifically covered by these standards, new buildings and buildings undergoing extensive remodeling shall generally meet requirements of the state-adopted building code and *National Fire Protection Association,* Life Safety Code (current edition) and the plans shall be approved by the State Fire Marshal.

(c) **Temporary tent jails.** The Department must approve the establishment and design of this type of facility. The State Fire Marshal must approve it. A county may erect a tent jail which is temporary in nature, to meet the needs of the county for confining minimum-security prisoners. A tent jail shall not detain juveniles and shall maintain continuous, physical and architectural separation of male and female prisoners. A tent jail shall not be required to meet minimum requirements for a jail facility but shall provide at least the following:
    (1) **Accommodations.**
       (A) Basic daily living needs;
       (B) Medical needs;
       (C) Shelter from inclement weather;
       (D) Freedom from obvious safety hazards;
       (E) Fire extinguishers as recommended by the Oklahoma State Fire Marshal; and
       (F) General comfort consistent with security and control of prisoners.
    (2) **Security.**
       (A) Tents erected inside a fenced area suitable for guarding and controlling prisoners; and
       (B) Permit prisoners to have visitors consistent with security requirements.

[**Source:** Amended at 8 Ok Reg 3129, eff 7-18-91 (emergency); Amended at 9 Ok Reg 1433, eff 5-1-92; Amended at 13 Ok Reg 2139, eff 6-13-96; Amended at 20 Ok Reg 2387, eff 7-11-2003]