IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JANICE BUSH, as Special Administrator for the Estate of Ronald Garland, deceased,<br><br>Plaintiff,<br><br>v.<br><br>BRET BOWLING, in his individual and official capacity and individual capacity as Sheriff of Creek County, Oklahoma, *et al.*,<br><br>Defendants. | Case No. 19-CV-00098-GKF-FHM |

**OPINION AND ORDER**

This matter comes before the court on Motion for Sanctions [Doc. 192] of plaintiff Janice Bush, as Special Administrator for the Estate of Ronald Garland, deceased. For the reasons set forth below, the motion is granted in part and denied in part.

**I.     Background and Procedural History**

Plaintiff brings this lawsuit pursuant to 42 U.S.C. § 1983, the federal civil rights statute, following Ronald Garland's death while held as a pre-trial detainee at the Creek County Jail. On June 10, 2017, Creek County Jail employees placed Garland in a restraint chair and allegedly shoved Garland's head downward between his knees to the point that they cut off the oxygen supply to his brain. Garland died of an anoxic brain injury on June 17, 2017.

The motion for sanctions relates to video of the Creek County Jail booking area during the period from approximately 6:30 p.m.—when detention officers moved Garland from N Pod to the detox cell—to approximately 9:45 p.m.—when detention officers removed Garland from the detox cell, culminating in Garland being placed in the restraint chair. Plaintiff seeks sanctions against

defendants the Board of County Commissioners of Creek County; Bret Bowling, in his official and individual capacity; Joe Thompson, in his official and individual capacity; Lance Prout, in his official and individual capacity; and Christopher Fetters, Brandon Fulks, and Jeffrey Labbee, in their individual capacities.[1] [Doc. 192].[2] The motion does not seek sanctions against defendants Turn Key Health Clinics, LLC and Kerri Janes, in her individual capacity.

The motion asserts that the Board of County Commissioners, Bowling, Thompson, Prout, and the Individual Detention Defendants failed to preserve video evidence of the Creek County Jail booking area that would depict: (1) a use of force incident involving Fetters and Garland at approximately 6:45 p.m.; (2) alleged deliberate antagonizing behaviors by Jail staff outside the detox cell that allegedly contributed to Garland's worsening condition; and (3) whether any defendants performed welfare checks on Garland through the detox cell door.[3] As sanction, plaintiff requests the court impose a default judgment. However, in the event that the court determines that default is not warranted, plaintiff requests any one or a combination of the following sanctions: (1) a mandatory adverse inference instruction to the jury that defendants destroyed relevant video images that were damaging to their position at trial; (2) a rebuttable presumption to the jury that defendants destroyed relevant video images that were damaging to

---

[1] The court refers to Chris Fetters, Brandon Fulks, and Jeff Labbee, in their individual capacities, as the "Individual Detention Defendants."

[2] As filed, the motion also sought sanctions against Newt Stephens, in his official capacity; Leon Warner, in his official capacity; and Lane Whitehouse, in his official capacity. However, in a June 17, 2020 Opinion and Order, the court granted those defendants' motion for judgment on the pleadings [Doc. 285], and entered judgment in their favor on June 18, 2020 [Doc. 288].

[3] In reply, plaintiff further asserts that defendants failed to preserve the operating system of the DVR system designated as Evidence Item No. 4. However, as set forth by this court in its August 28, 2020 Order, plaintiff's motion does not seek sanctions for spoliation of the operating system. [Doc. 310]. Thus, this order does not address any alleged spoliation of the operating system.

their position at trial; (3) precluding defendants from presenting any argument or defense that might be refuted by the missing video; (4) referral of the matter to the U.S. Attorney for the Northern District of Oklahoma for consideration of criminal charges; (5) waiver of attorney-client and work product privilege; (6) imposing plaintiff's costs and fees on defendants up to the present date; (7) imposing plaintiff's costs and fees on defendants regardless of the outcome of the trial; and (8) the exclusion of any reference to Garland's toxicology.

The Board of County Commissioners, Bowling, and Thompson filed a collective response in opposition [Doc. 214][4], as did the Individual Detention Defendants and defendant Prout. [Doc. 216]. Plaintiff filed reply briefs [Doc. 228; Doc. 229], and the court permitted defendants sur-replies. [Doc. 237; Doc. 239]. On September 1, 2020, the court held an evidentiary hearing on the motion and took the matter under advisement. [Doc. 311].

## II. Standard

Plaintiff seeks sanctions pursuant to Federal Rule of Civil Procedure 37 and the "Court's inherent authority." [Doc. 192, p. 7]. Effective December 1, 2015, Fed. R. Civ. P. 37 was amended to "authorize[] and specif[y] measures a court may employ" if a party fails to take reasonable steps to preserve electronically stored information that should have been preserved in anticipation of litigation. Fed. R. Civ. P. 37(e) advisory committee's note to 2015 amendment. Because Rule 37(e) was in effect both at the time of the alleged conduct and when the sanctions motions was filed, Rule 37(e) controls. *Newberry v. Cnty. of San Bernardino*, 750 F. App'x 534, 537 (9th Cir. 2018). That is, the 2015 amendment "forecloses reliance on inherent authority or state law to

---

[4] For ease of reference in this order, the court refers to the Board of County Commissioners, Bowling, and Thompson, collectively, as the County.

determine when certain measures should be used." Fed. R. Civ. P. 37(e) advisory committee's note to 2015 amendment.

Rule 37(e) states:

If electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court:

> (1) upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice; or
>
> (2) only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation may:
>
>> (A) presume that the lost information was unfavorable to the party;
>>
>> (B) instruct the jury that it may or must presume the information was unfavorable to the party; or
>>
>> (C) dismiss the action or enter a default judgment.

As the party seeking relief, plaintiff bears the burden of demonstrating that the requirements of Fed. R. Civ. P. 37(e) are met. *Mafille v. Kaiser-Francis Oil Co.*, No. 18-CV-586-TCK-FHM, 2019 WL 2189515, at *2 (N.D. Okla. May 21, 2019); *Galbraith v. State Farm Fire & Cas. Co.,* No. CIV-16-1227-SLP, 2018 WL 8343833, at *2 (W.D. Okla. July 20, 2018) (collecting cases).

### III. Sanctions Against the County

Because the County and Individual Detention Defendants (with Prout) filed their own response briefs, the court separately considers whether sanctions should be imposed against the County and/or the Individual Detention Defendants and Prout. The court first considers sanctions against the County.

*A.     Foundational Requirements*

Sanctions under both Fed. R. Civ. P. 37(e)(1) and Fed. R. Civ. P. 37(e)(2) require movant to establish that: (1) the electronically stored information (ESI)[5] "should have been preserved in the anticipation or conduct of litigation"; (2) defendants "failed to take reasonable steps to preserve it"; and (3) the ESI "cannot be restored or replaced through additional discovery." *See Cox v. Swift Transp. Co. of Ariz., LLC*, No. 18-CV-117-CVE-JFJ, 2019 WL 3573668, at *1 (N.D. Okla. Aug. 6, 2019); Fed. R. Civ. P. 37(e).

With respect to the first requirement, district courts generally conclude that government defendants should reasonably anticipate litigation when a person dies while in the government's custody. *See Bistrian v. Levi*, — F. Supp. 3d —, 2020 WL 1443735, at *6 (E.D. Pa. Mar. 24, 2020) (collecting cases). Further, pursuant to the Creek County Criminal Justice Center Incident Reports policy, incidents involving the death of an inmate are "Priority I" incidents and "are deemed to have the potential of resulting in litigation." [Doc. 229-2, pp. 1-2].[6]

The County argues that no duty existed to preserve the *specific* video evidence because it could not have foreseen that video of the booking area preceding the use of force incident that culminated in Garland being placed in the restraint chair would be relevant. "[T]he 'reasonableness' inquiry in an excessive force case is an objective one: the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Graham v. Connor*, 490 U.S. 386,

---

[5] The parties stipulate that the surveillance video constitutes electronically stored information and, further, courts implicitly conclude the same. *Sosa v. Carnival Corp.*, No. 18-20957-ALTONAGA, 2018 WL 6335178, at *10 (S.D. Fla. Dec. 4, 2018) (collecting cases).

[6] Although the court generally does not consider new material attached to reply briefs, in this case, the court permitted defendants to file sur-replies to address the new material.

397 (1989). Deliberate indifference to a serious medical need of a prisoner is manifested "by prison guards . . . intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Estelle v. Gamble,* 429 U.S. 97, 104-05 (1976). Defendants' conduct in the three hours immediately preceding the final use of force incident falls within the scope of relevant information under either standard. Further, Joe Thompson, Creek County Undersheriff, testified that he instructed the Jail staff to save video for the twenty-four hours *prior to* the final use of force incident so as to capture all of Garland's time in the Jail. Based on this testimony, it is clear that Undersheriff Thompson, and hence the County, understood the relevance of, and need to preserve, all surveillance video footage during Garland's time in the Creek County Jail. Plaintiff therefore satisfies her burden to demonstrate that the video should have been preserved in anticipation of litigation.

With respect to the second requirement, because plaintiff does not explicitly seek sanctions under Fed. R. Civ. P. 37(e), the parties did not specifically brief this element. Based on the evidence presented at the evidentiary hearing, however, the court concludes that the County failed to undertake reasonable efforts to preserve the information.

Based on the testimony presented during the evidentiary hearing, Cody Smith, the then-Assistant Jail Administrator, immediately took the initiative to begin the preservation process in the late hours of June 10, 2017/early morning hours of June 11, 2017. Smith testified that he initially saved video of Garland as he moved through the Jail, essentially tracking him through the facility and saving those snippets to CDs. This occurred prior to Undersheriff Thompson's directive to save video from the jail for the twenty-four hours prior to and including the final use of force incident. The next morning, Lance Prout, the then-Jail Administrator for Creek County, instructed Smith to begin saving video from the entire jail to an external hard drive, rather than

CDs. Mentor Kalevik, the then-Chief of Security at the jail, assisted with saving the video to the external hard drive.

Smith testified that he knew that he did not finish burning all of the video of Garland to CDs during the overnight hours of June 10. When the process shifted to external hard drive, the system crashed multiple times, forcing jail administrators to restart each time. Yet, Prout testified that he did not review the videos on the external hard drive to confirm that preservation occurred as directed.[7] Rather, Prout testified that, when he received the external hard drive, he did not "plug it in" to review but, instead, placed it in a sealed evidence envelope with the CDs. Likewise, Thompson testified that, at some point, he was notified that preservation was complete, but that he did not review the video. Nor did Kalevik check the video. The County's failure to undertake any effort to confirm that Jail administration staff preserved the video as directed renders the County's efforts to preserve unreasonable.

As for the third requirement, the County Defendants do not dispute that the video evidence cannot be restored or replaced through additional discovery. Rather, based on the evidence presented, it appears that the footage was automatically "written over" by the Geovision software used by Creek County at the time. Thus, plaintiff satisfies her burden of establishing the foundational requirements for sanctions under Fed. R. Civ. P. 37(e) against the County.

B.   *Fed. R. Civ. P. 37(e)(2)*

Plaintiff primarily seeks sanctions in the form of default judgment against defendants or a mandatory adverse inference instruction to the jury that defendants destroyed relevant video

---

[7] Prout testified that he did review one video of Garland entering the Creek County Jail from the sally port, but testified that he viewed the videos from the CDs burned by Smith, not the external hard drive.

images that were damaging to their position at trial. Pursuant to Fed. R. Civ. P. 37(e)(2), a court may presume that the lost information was unfavorable to the party; instruct the jury that it may or must presume the lost information was unfavorable to the party; or dismiss the action or enter a default judgment, "only upon finding that the party acted *with the intent to deprive* another party of the information's use in the litigation." Fed. R. Civ. P. 37(e)(2) (emphasis added).[8] The Rule is intended to reject cases "that authorize the giving of adverse-inference instructions on a finding of negligence or gross negligence." Fed. R. Civ. P. 37(e) advisory committee's note to 2015 amendment. The advisory committee explained:

> Adverse-inference instructions were developed on the premise that a party's intentional loss or destruction of evidence to prevent its use in litigation gives rise to a reasonable inference that the evidence was unfavorable to the party responsible for loss or destruction of the evidence. **Negligent or even grossly negligent behavior does not logically support that inference**. Information lost through negligence may have been favorable to either party, including the party that lost it, and inferring that it was unfavorable to that party may tip the balance at trial in ways the lost information never would have. The better rule for the negligent or grossly negligent loss of electronically stored information is to preserve a broad range of measures to cure prejudice caused by its loss, but to limit the most severe measures to instances of intentional loss or destruction.

Fed. R. Civ. P. 37(e) advisory committee's note to 2015 amendment (emphasis added).

For the reasons set forth by this court on the record during the September 1, 2020 hearing, plaintiff fails to satisfy her burden to demonstrate that the County acted with the intent to deprive her of the video in this litigation.[9] Although in her briefing plaintiff pointed to evidence that Lance

---

[8] "Rule 37(e)(2)'s intentional deprivation requirement is consistent with Tenth Circuit law regarding the imposition of severe sanctions in the form of adverse inference instructions." *Cox*, 2019 WL 3573668, at *2 (citing *Turner v. Pub. Serv. Co. of Colo.*, 563 F.3d 1136, 1149 (10th Cir. 2009); *Browder v. City of Albuquerque*, 209 F. Supp. 3d 1236, 1244 (D.N.M. 2016)); *see also Jones v. Norton*, 809 F.3d 564, 580 (10th Cir. 2015).

[9] As recognized by another Oklahoma federal court, "[s]ome dispute exists regarding whether (i) a preponderance of the evidence or (ii) clear and convincing evidence is required to fulfill the

E. Watson, the Chief Operating Officer of Avansic, Inc.[10], found 5,248 "deleted" files on an Evidence Item No. 4 hard drive, Watson testified that "deleted files" does not necessarily mean that someone intentionally removed the files. Rather, it signifies only that the files are no longer in active space. Prout testified that he never deleted the video or instructed that the video be deleted, nor did he deliberately choose not to save the video or instruct that the video not be saved. Likewise, Thompson testified that he did not delete the video or ask anyone else to delete the video. Smith and Kalevik testified that they did not know what happened to the missing video.

Further, although the County's efforts to confirm that the video was preserved as directed were unreasonable, plaintiff offers no evidence that the County knew or should have known that the external hard drive did not include the video of the booking area during the three hour period. Rather, Prout, Thompson, and Kalevik testified that they did not know that the video was not properly preserved until years later, likely in connection with this lawsuit. At that point, the video was written over as a function of the Geovision software.

Finally, it is significant to the court that the video of the booking area included on the external hard drive begins immediately before the use of force incident culminating in the use of the restraint chair and extends over twenty-four hours afterward. Essentially, as Thompson testified, the video is one day "off." The twenty-four hour difference in the video as instructed to be saved and as preserved suggests a mistake or miscommunication, not intentionality.

---

moving party's burden." *Galbraith*, 2018 WL 8343833, at *2 n.2. The Tenth Circuit has not addressed the issue. Because plaintiff fails to satisfy either standard, the court does not decide the issue.

[10] Avansic provides e-discovery and digital forensic services to the business and legal communities.

Based on the foregoing, at most, plaintiff establishes that the County Defendants were negligent or grossly negligent in failing to preserve the three hours of booking area surveillance footage. Negligence and gross negligence are insufficient to warrant sanctions under Fed. R. Civ. P. 37(e)(2). *See* Fed. R. Civ. P. 37(e) advisory committee's note to 2015 amendment

During the September 1 evidentiary hearing, plaintiff's counsel argued that the County knew it had problems with its video surveillance system because it had previously been sanctioned for spoliation of video in *Bloom v. Toliver*, No. 12-CV-169-JED-FHM, 2015 WL 5344360 (N.D. Okla. Sept. 14, 2015). Plaintiff's counsel contended that the failure to preserve the evidence in this case is illustrative of a "systemic failure" by the County that rises to the level of specific intent to deprive. The argument is unpersuasive for three reasons. First, two incidents is not illustrative of a "systemic failure." Second, in *Bloom*, the evidence indicated that the defendants had made no effort to preserve the video at issue, not that the video surveillance system crashed during the preservation process. Thus, the prior case did not provide notice of "problems" with the surveillance system. Third, even assuming the alleged "systemic failure" constitutes gross negligence, gross negligence is insufficient to support sanctions under Fed. R. Civ. P. 37(e)(2). Thus, the court turns to Fed. R. Civ. P. 37(e)(1).

C.     *Fed. R. Civ. P. 37(e)(1)*

Where sanctions under Fed. R. Civ. P. 37(e)(2) are inappropriate, the court "*upon finding prejudice to another party from loss of the information,* may order measures no greater than necessary to cure the prejudice." Fed. R. Civ. P. 37(e)(1) (emphasis added). "An evaluation of prejudice from the loss of information necessarily includes an evaluation of the information's importance in the litigation." Fed. R. Civ. P. 37(e) advisory committee's note to 2015 amendment;

*see also Henning v. Union P. R.R. Co.*, 530 F.3d 1206, 1220 (10th Cir. 2008) ("Without proving relevance, however, [plaintiff] could not show she was prejudiced.").

As previously stated, plaintiff argues that the missing video would depict: (1) the first use of force incident (at approximately 6:45 p.m.); (2) alleged antagonizing behaviors by Jail staff outside the detox cell door that contributed to Garland's worsening condition; and (3) whether defendants performed welfare checks on Garland.

The County raises a number of objections to the missing video's relevancy. With respect to the first use of force incident, the County argues that, if the incident occurred in the doorway to the medical cell, the video would not have captured the incident due to the positioning of the medical cell room door. However, depending on the positioning of the medical cell door, as well as the exact positioning of the detention officers and Garland, it is very possible that the booking area camera would have captured video of the incident. *See* [Defendant's Exhibit 10].

The County also objects to the video's relevancy because the incident was "minor" and there is no evidence that Garland suffered any injuries as a result. While plaintiff's excessive force claim is not premised on the first use of force incident, the first incident is not wholly irrelevant to plaintiff's claims in this matter. Fetters was involved in the first use of force incident. The County admits that, shortly before the first use of force incident, Fetters threw a cup of water in Garland's face. Subsequent to the first use of force, Fetters was involved in the second use of force incident that ultimately culminated with Garland's placement in the restraint chair. Furthermore, it was Fetters who held Garland's head down to the point of allegedly depriving Garland of oxygen. Viewed in this context, if the video depicted excessive or unnecessary use of force by Fetters while escorting Garland back to the detox cell, it would bolster plaintiff's theory that Fetters deliberately

antagonized Garland and later used excessive force in connection with the second use of force incident.

As to other alleged antagonizing behaviors by Jail staff, the County contends the missing video would be of little value because it did not include audio and would therefore not indicate whether Jail staff verbally taunted Garland. However, whether conscious or unconscious by the perpetrator, taunting often includes physical, non-verbal cues that a viewer could recognize. Further, the County acknowledges that detention officers did not perform any welfare checks of Garland after returning him to the detox cell from medical. If the video depicted a detention officer approaching the detox cell door, in light of the County's acknowledgement that no welfare checks were performed, the video could suggest that the detention officer approached the cell to taunt Garland.

Additionally, given that video exists of Garland inside the detox cell during the period from 6:30 p.m. to 9:45 p.m. (except for his brief visit to medical), plaintiff has been deprived of the opportunity to compare Garland's behavior in the detox cell with instances when detention officers may have observed Garland through the door. Comparing the video would have enabled plaintiff's counsel to determine whether or not the detention officers were aware of any deterioration in Garland's condition, which could bolster plaintiff's deliberate indifference to a serious medical need claim against the Individual Detention Defendants.

Finally, although the County points to other evidence that detention officers antagonized Garland as being sufficient to mitigate any prejudice from the loss of video—specifically, statements of other Creek County Jail detainees Aaron Murphy and Casaundra Honey—it is not clear to the court that the Individual Detention Defendants have conceded that they taunted or otherwise antagonized Garland. Rather, in signed Declarations, Fetters, Labbee, and Fulks *denied*

antagonizing Garland or witnessing anyone else antagonizing Garland. [Doc. 216-4, p. 1; Doc. 216-5, p. 1; Doc. 220-1, p. 1]. As recognized by another court in this district, "the unbiased eye of a surveillance camera would lend a great deal of credibility to one side's version of the events." *Bloom*, 2015 WL5344360, at * 7 (quoting *Kounelis v. Sherrer,* 529 F. Supp. 2d 503, 519 (D.N.J. 2008)).

The court acknowledges the somewhat limited probative value of the missing video in light of the other evidence available to plaintiff, including video of Garland in the detox cell both before and after being taken to medical, eyewitness statements, and video of the booking area during the second use force incident and placement of Garland in the restraint chair. However, for the reasons discussed above, plaintiff has been deprived of video relevant to her claims. Plaintiff has therefore satisfied her burden to establish that she was prejudiced as a result of the loss of the video.

Pursuant to Fed. R. Civ. P. 37(e)(1), the court must order "measures no greater than necessary to cure the prejudice." In light of the fact that discovery in this matter has not yet closed nor have dispositive motions been filed, the court imposes attorney's fees and reserves for later determination the sanctions that are sufficient, but no greater than necessary, to cure the prejudice.

### IV. Sanctions Against the Individual Detention Defendants

Plaintiff also seeks sanctions against Fetters, Labbee, Fulks, and Prout for spoliation of the booking area video. The court concludes that sanctions against Fetters, Labbee, and Fulks are inappropriate.

Under similar circumstances, federal district courts have concluded that "[s]poilation sanctions are only available against the party who had possession or control of the missing evidence." *Storey v. Effingham Cnty.*, No. CV-415-149, 2017 WL 2623775, at *2 (S.D. Ga. June 16, 2017); *see also Barnes v. Harling,* 368 F. Supp. 3d 573, 609 (W.D.N.Y. 2019) (collecting

cases) (quoting *Thousand v. Corrigan,* No. 15-CV-01025-MAD-ATB, 2017 WL 4480185, at *3 (N.D.N.Y Oct. 6, 2017)) ("[D]istrict courts within this Circuit have denied requests for sanctions against defendant corrections officers who 'had no control over the recordings, had no duty to maintain them, and were not in any way involved in the failure to preserve the evidence.'"); *Hauck v. Wabash Nat'l Corp.*, No. 18-471-KG-LF, 2020 WL 532345, at *7 (D.N.M. Feb. 3, 2020). Thus, in *Storey*, a § 1983 excessive force case, the Southern District of Georgia refused to impose sanctions against individual detention officers for destruction of jail surveillance video where the movant produced no evidence that the individual detention officers had any authority to preserve the video. *Storey*, 2017 WL 2623775, at *2. The court concluded "[plaintiff] is not entitled to sanctions against the individual [detention] defendants, who could have done nothing to prevent or spur the destruction of these videos regardless of their own awareness of their importance." *Id.* at *3.

Similarly, "[t]he current trend among district courts appears to be to impute liability for an agent's spoliation to the principal 'based on traditional notions of agency law, in which a defendant principal exercises control and authority over its third-party agent who possess the spoliated evidence.'" *Edifecs, Inc. v. Welltok, Inc.,* No. 18-1086-JLR, 2019 WL 5862771, at *4 (W.D. Wash. Nov. 8, 2019), *appeal filed*, No. 20-35102 (9th Cir. Feb. 7, 2020) (collecting cases); *see also Gemsa Enters., LLC v. Specialty Foods of Ala., Inc.*, No. CV-13-00729-JAK, 2015 WL 12746220, at *9 (C.D. Cal. Feb. 10, 2015); *Vohra v. City of Placentia,* No. CV-11-1267-DSF, 2017 WL 10544048, at *3 (C.D. Cal. Dec. 29, 2017) ("It would not be appropriate, however, to impute the City's failure to preserve the recording to [individual defendant] because, among other things, [individual defendant] had no control over the recording and the City is not [the individual defendants'] agent.").

Defendants Fetters, Labbee, and Fulks submit Declarations in which they state: (1) during the performance of their duties at the Creek County Jail, they had no control over the jail's video surveillance monitoring system; (2) they were never consulted regarding the contents of any jail surveillance video related to Garland; (3) they were never tasked with preserving or maintaining any jail surveillance video; and (4) they had no role or authority in preserving the surveillance video. [Doc. 216-4, p. 1; Doc. 216-5, p. 1; Doc. 220-1, p. 1]. During the evidentiary hearing, Prout offered testimony consistent with those Declarations. Prout testified that the Jail Administrator, not individual detention officers, is responsible for making sure that video depicting use of force incidents is saved. The surveillance footage could only be saved from the Jail Administrator's office, which the Individual Detention Defendants did not have access to. Although Prout acknowledged the Creek County Jail policy requiring individual detention officers to write a report and attach relevant video, Prout testified that he had no reason to believe that Smith or Kalevik would not have followed his instructions to preserve the video. Thus, the evidence is that the surveillance video was in the care, custody, and control of the County through the Jail Administrator, not the Individual Detention Defendants.

Nor does plaintiff offer any evidence that the County, Prout, Smith, or Kalevik—those primarily responsible for saving the video—acted as agents of the Individual Detention Defendants. Thus, it would be inappropriate to impute the County's failure to preserve the video to the Individual Detention Defendants. *Vohra*, 2017 WL 10544048, at *3.

In response, plaintiff argues that the Creek County Criminal Justice Center Incident Reports policy imposed a duty on Fetters, Labbee, and Fulks to maintain the video. Specifically, the policy required an employee involved in a Priority I incident to complete an Incident Report Form. [Doc. 229-2, p. 3]. The policy required the Incident Report Form to include, among other

things, "[a]s attachments, videotapes and/or photos, if any." [*Id.*]. The advisory committee notes to the 2015 amendments to Fed. R. Civ. P. 37 state:

> [C]ourts may sometimes consider whether there was an independent requirement that the lost information be preserved. Such requirements arise from many sources – statutes, administrative regulations, an order in another case, or a party's own information-retention protocols. The court should be sensitive, however, to the fact that such independent preservation requirements may be addressed to a wide variety of concerns unrelated to the current litigation. *The fact that a party had an independent obligation to preserve information does not necessarily mean that it had such a duty with respect to the litigation, and the fact that the party failed to observe some other preservation obligation does not itself prove that its efforts to preserve were not reasonable with respect to a particular case.*

Fed. R. Civ. P. 37(e) advisory committee's note to 2015 amendment (emphasis added). The court is not persuaded that the Creek County Criminal Justice Center Incident Reports policy is sufficient to impose an independent duty to preserve the video on the Individual Detention Defendants, particularly in light of Prout and Thompson's testimony regarding the chain of command and the Jail Administrator's responsibility to preserve video evidence. Regardless, the court need not decide the issue because sanctions are not warranted against the Individual Detention Defendants for an additional reason, but related reason.

As previously stated, sanctions under both Fed. R. Civ. P. 37(e)(2) and Fed. R. Civ. P. 37(e)(1) require movant to first establish that: (1) the ESI "should have been preserved in the anticipation or conduct of litigation"; (2) defendants "failed to take reasonable steps to preserve it"; and (3) the ESI "cannot be restored or replaced through additional discovery." *See Cox*, 2019 WL 3573668, at *1. Plaintiff fails to satisfy their burden with respect to the second requirement in connection with her request for sanctions against the Individual Detention Defendants.

As previously stated, during the September 1 evidentiary hearing, the parties presented testimony that the Jail Administrator, not individual detention officers, was responsible for preserving video surveillance footage. The video surveillance footage was stored in the Jail

Administrator's office, which the Individual Detention Defendants did not have access to. Prout testified that, typically, to ensure that relevant video was saved, he reviewed the Jail Incident Reports submitted pursuant to the policy. Prout stated that he had never called the Individual Detention Defendants into his office to save video. Thus, with respect to the video of Garland, Prout testified that the Individual Detention Defendants had no role in saving the video because their participation was unnecessary. The court declines to impose sanctions on the Individual Detention Defendants because plaintiff offers no evidence that they had any role in either the preservation or destruction of the video. At best, the evidence suggests that the Individual Detention Defendants reasonably relied on the Jail Administrator and staff.

## V.     Sanctions Against Prout

Although Prout joined the Individual Detention Defendants' response, the same analysis does not apply to Prout. Unlike the Individual Detention Defendants, the evidence indicates that it was, in fact, Prout's responsibility to preserve the video surveillance footage as directed by Thompson. Thus, unlike the Individual Detention Defendants, plaintiff satisfies her burden to show that the video was in Prout's care, custody, or control. Additionally, for the reasons discussed above with respect to the County, plaintiff offers sufficient evidence that Prout failed to undertake reasonable steps to preserve the video, and that she was prejudiced as result. Accordingly, sanctions are appropriate against Prout.

## VI.     Conclusion

WHEREFORE, the Motion for Sanctions [Doc. 192] of plaintiff Janice Bush, as Special Administrator for the Estate of Ronald Garland, deceased, is granted in part and denied in part.

The County and Prout shall pay reasonable attorney's fees and costs incurred by plaintiff associated with the following: (1) Plaintiff's Motion for Sanctions [Doc. 192], including the

evidentiary hearing held on September 1, 2020; (2) plaintiff's Response to the Motion to Hold Ruling on Motion for Sanctions in Abeyance and Request for Evidentiary Hearing [Doc. 250]; (3) plaintiff's Response to Motion to Amend Scheduling Order [Motion to Designate Rebuttal Expert] [Doc. 247]; and (4) plaintiff's Motion to Compel Discovery from defendant Bret Bowling in his official capacity [Doc. 141].

The court reserves the determination of the sanctions to be imposed against the County and Prout, and will consider proposals to be submitted by the parties at a date to be set under separate order. The parties shall confer in advance of submitting the proposals in an effort to reach an agreement.

IT IS SO ORDERED this 10th day of September, 2020.

GREGORY K. FRIZZELL
UNITED STATES DISTRICT JUDGE